IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRAD HALL

    Plaintiff,

    v.

Civil Action 2:15-cv-1206
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Brad Hall, who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") appointing the Residential Home Association of Marion ("RHAM") as his representative payee to receive his Social Security Disability Insurance Benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF Nos. 9 and 11).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff applied for and has been approved for Disability Insurance Benefits (DIB) since September 1990.  On February 20, 2013, RHAM requested to be selected as a representative payee for Plaintiff.  On March 8, 2013, the Social Security Administration ("SSA") sent Plaintiff correspondence notifying him that based upon the information they had received, it had selected RHAM as his representative payee and therefore planned to send his Social Security Benefits to RHAM.  The correspondence explained the role and duties of a representative payee and advised Plaintiff of what to do if he disagreed with the decision.  (R. at 36-37.)  On March 28, 2013, Plaintiff field a Request for Reconsideration.  (R. at 39-41.)  On April 3, 2013, the SSA notified Plaintiff that it had determined that the evidence supported his need for a representative payee and that it chose RHAM to be his payee.  (R. at 42-43.)  The SSA explained why it made its decision and also how Plaintiff could challenge the decision if he disagreed.  (R. at 42-43.) Plaintiff timely requested a hearing before an administrative law judge.  (R. at 44-45.) Administrative Law Judge Edmund E. Giorgione ("ALJ") held a hearing on October 3, 2013, at which Plaintiff appeared and testified without the assistance of counsel.  (R. at 59-67.)

On November 1, 2013, the ALJ issued a decision finding that it was in Plaintiff's best interest to designate a representative payee and that the selection of RHAM to be his representative payee was appropriate.  (Tr. 10-12).  In his decision, the ALJ pointed out that the evidence in the record reflected that Plaintiff had been preyed upon by others and that his money had been both coerced from him and stolen.  The ALJ offered the following examples:

> The evidence documents incidents such as [Plaintiff] being coerced to make withdrawals from the bank, having had his debit card stolen and used to make unauthorized withdrawals from his bank and being coerced to add a person to his cell phone account and then subsequently running up the bill to where [Plaintiff] needed

> to establish a payment plan to meet the obligation, which also caused [Plaintiff] to not have money to cover utility bills. The evidence also documents other activity done against [Plaintiff's] best interest and [Plaintiff] had reported that he was scared of the individual(s) perpetrating the offenses against him.

(R. at 11.) The ALJ also noted that Plaintiff admitted during his testimony that he had been tricked out of money, had items stolen from him, and had been threatened by people wanting money from him. (*Id*.) Finally, the ALJ concluded that the selection of RHAM as Plaintiff's representative payee was appropriate because "the organization provides services to [Plaintiff], [Plaintiff] has no relatives or close friends willing to act in a representative capacity and the organization has previously acted in the capacity of a representative payee for [Plaintiff]." (*Id*.)

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.) Plaintiff then timely commenced the instant action.

The entirety of Plaintiff's Statement of Errors states as follows: "I'm my own representative and I am my own payee not tham [sic] Whin [sic] I turned 18 my mom gave me everything 24 years I need get back to me[.] [Y]our frand [sic] Brad Hall." (ECF No. 13.)

In her Memorandum in Opposition, the Commissioner offered a more detailed discussion of the record evidence upon which the ALJ relied in making his findings:

> On February 20, 2013, RHAM requested to be selected as representative payee for Plaintiff (Tr. 33). RHAM indicated that Plaintiff needed a payee because he was "easily taken advantage of" (Tr. 33).
>
> A letter from Nicole Powell, an Investigative Agent at the Marion County Board of Developmental Disabilities, indicated that since 2004, Plaintiff had 11 misappropriations filed on his behalf (Tr. 50). There were three incidents where his property was stolen because he did not secure it properly—two of those incidents involved an unknown person breaking into his apartment and stealing money (Tr.

50). Ms. Powell noted that in 2005, Plaintiff let an unknown girl into his home, and she stole money from his wallet; in 2006, Plaintiff gave a woman at church his wallet, and she stole money from it; and in 2011, Plaintiff's debit card was stolen (Tr. 50). More recently, in 2013, Plaintiff was robbed by two women who stole over $165 from him, and on another occasion, his debit card was stolen, and over $800 was taken from his bank account (Tr. 50). Ms. Powell also reported that Plaintiff had erred in filling out a check to the water department, and when it was returned to him, he send it back without changing anything and almost had his water turned off (Tr. 50).

The record also includes a MUI/UI (Major Unusual Incidents/Unusual Incidents) Incident Log, covering the period between January 2008 and February 2013 (Tr. 52-58). Although not entirely clear, it appears that this report was prepared by RHAM (*See* Tr. 57, indicating that RHAM contacted bank to determine if checks had cleared, then indicating "we" will call bank daily to check). The report documents various incidents demonstrating Plaintiff's vulnerability to others and his problems with managing funds. For instance, according to the report, in February 2010, Plaintiff's girlfriend, Brandi, and her brother, stole Plaintiff's PlayStation after Plaintiff let them in his apartment for a visit (Tr. 52). In April 2010, Plaintiff had to be put on a payment plan with Verizon Wireless because he could not afford to pay his $813.66 bill (Tr. 54). At that time, it was noted that Plaintiff had given money to Brandi, but he would not reveal why he did so, and he did not have enough money to pay additional bills from Ohio Edison, Columbia Gas, or Time Warner (Tr. 53). In August 2011, Plaintiff indicated that he let two girls come into his home, and one of them stole his debit card (Tr. 55). In addition, Plaintiff required assistance to cancel his debit card and file a fraud claim for two withdrawals that had been made (Tr. 55). In September 2011, Plaintiff gave Brandi his food stamp card, and there were almost $200 in transactions made on it; this even after he had been told not to let others buy foo[d] on his food stamp card because he could possibly lose his benefits (Tr. 55). On another occasion, Plaintiff had gone to the check cashing facility to take out $700 to loan to his girlfriend (Tr. 55). Also, Plaintiff had added his girlfriend to his cell phone account, and she ran up the bill such that Plaintiff had to establish a payment plan to meet his financial obligations (Tr. 56). On another occasion, Plaintiff reported that he gave Brandi money because he was afraid of her (Tr. 56). Again, in December 2011 and February 2012, it appears that Brandi coerced Plaintiff into giving her money (Tr. 57-58). In October 2012, Plaintiff did not understand how to correct a check to the water company that he had improperly completed, and he received a notice that his water would be shut off (Tr. 57). RHAM contacted Plaintiff's bank, and was going to continue to try to help resolve the problem (Tr. 57).

(Comm'r's Mem. in Opp. 2-4, ECF NO. 16.) The Commissioner maintains that substantial evidence supports that ALJ's determination such that Plaintiff's Statement of Errors should be overruled.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.  ANALYSIS

Having reviewed the record and the ALJ's decision, the Undersigned finds that substantial evidence supports the ALJ's finding that appointment of a representative payee to manage Plaintiff's benefits is in his best interest.

"Although the Social Security Administration generally pays [Social Security] benefits directly, it may distribute them for a beneficiary's use and benefit to another individual or entity as the beneficiary's representative payee."  *Washington State Dep't of Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 376 (2003) (quoting 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(ii)(I) (internal quotation marks omitted) and citing 20 C.F.R. §§ 404.2001, 404.2010, 416.601, 416.610).  The regulations provide that "[a] representative payee will be selected if [the SSA] believe[s] that the interest of a beneficiary will be served by representative payment rather than direct payment of benefits."  20 C.F.R. § 404.2001.  The regulations further provide that "the Commissioner of Social Security must be satisfied that the particular appointment is 'in the interest of' the beneficiary."  *Id*. (quoting  §§ 405(j)(2)(A)(ii), 1383(a)(2)(B)(i)(II)).

The Undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff's interests are best served by appointment of a representative payee.  In addition to the ample evidence cited in the ALJ's decision and outlined by the Commissioner in the Memorandum in Opposition, Plaintiff acknowledged during his hearing testimony that he had been "tricked out of almost $3,000 . . . plus stolen items" in the past four years.  (R. at 62-63.)

6

When asked how he would protect himself, Plaintiff responded, "I'm not have no more ATM card. That's why I'm not get because no more ATM for me." (R. at 63.) Plaintiff also acknowledged that he had been threatened by others who wanted his money and stated that these individuals now leave him alone because he has a payee. (*Id*.)

Significantly, Plaintiff does not challenge the ALJ's finding to appoint RHAM as his representative payee as contrasted with any other person or organization. Regardless, the Undersigned further finds that the ALJ reasonably concluded that the selection of RHAM as his representative payee was "in the interest of" Plaintiff. The application RHAM submitted reflects that it provides services to Plaintiff and that he "has no relatives or close friends who live with or are interested in being his representative payee." (R. at 33.) The record contains no evidence contradicting RHAM's representations.

In sum, substantial evidence supports the ALJ's determination that appointment of RHAM as Plaintiff's representative payee was in his best interest. It is therefore recommended that Plaintiff's Statement of Errors be overruled and that the Commissioner's decision be affirmed.

## IV. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

### V. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendations, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: January 24, 2017         /s/ *Elizabeth A. Preston Deavers*
                               ELIZABETH A. PRESTON DEAVERS
                               UNITED STATES MAGISTRATE JUDGE